**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **RAUDELL MERCADO,** | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :   **Case No. 3:16cv1622(VLB)** |
| | : |
| **DEP'T OF CORRECTIONS, ET AL.,** | : |
| **Defendants.** | : |

**INITIAL REVIEW ORDER**

The Plaintiff, Raudell Mercado, currently incarcerated at Northern Correctional Institution ("Northern"), has filed a motion for appointment of counsel and a civil rights complaint.  He names the State of Connecticut Department of Correction,[1] Commissioner Scott Semple, Deputy Commissioner Monica Rinaldi, Warden Ann Cournoyer, Deputy Wardens William Mulligan and Richard Laffargue, Acting Warden Scott Erfe, Director of Clinical Services Craig Burns, Americans with Disabilities Act ("ADA") Director Colleen Gallagher, Psychologist Joslyn Cruz, Drs. Mark Frayne and Gerard Gagne, Health Service Administrator Brian Liebel and Captain Jesse Johnson as Defendants.   For the reasons set forth below, the complaint is dismissed in part and the motion for appointment of counsel is denied.

**I.**   **Complaint [Dkt. No. 1]**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil

---

[1]  **The Plaintiff incorrectly refers to Defendant State of Connecticut Department of Correction as the Department of Corrections.  The State of Connecticut Department of Correction website may be accessed at http://www.ct.gov/doc/site/default.asp.  From this point forward, the Court will**

complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action. . .'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

In August 2015, Commissioner Semple, Deputy Commissioner Rinaldi and Director of Psychiatric Services Burns transferred the Plaintiff to Northern. The

refer to Defendant Department of Corrections as the Department of Correction.

Plaintiff was a pre-trial detainee when he arrived at Northern.  Department of Correction records reflect that the Plaintiff was sentenced on September 14, 2015.[2]

The Plaintiff has been diagnosed with multiple mental disorders.  He has taken medication to treat the disorders since childhood.

The Plaintiff claims that there are no mental health units at Northern.  It was the decision of Commissioner Semple, Deputy Commissioner Rinaldi, Director of Psychiatric Services Burns, Warden Cournoyer, Deputy Warden Mulligan, Health Service Administrator Brian Liebel, and ADA Director Gallagher to confine the Plaintiff in phase one of the administrative segregation at Northern.

The conditions in phase one, including isolation, are very restrictive and have exacerbated the Plaintiff's mental illnesses and caused him physical injury as well.  The conditions in administrative segregation include: confinement to a cell for twenty-three hours a day, meals eaten in the cell, recreation one hour a day, showers three times a week, no contact visits, one telephone call a week, no work assignments, no participation in congregate religious services and limited use of the toilet and sink.  The Plaintiff also asserts that he must wear full restraints when leaving his cell.  The Plaintiff claims that he has been confined in phase one of administrative segregation at Northern for almost the entire time that he has remained at Northern.

---

[2]  **The plaintiff's Offender Information record may be found on the Department of Correction website under Inmate Search using his CT Inmate Number 400861.  *See* http://www.ct.gov/doc/site/default.asp.  (Last visited on**

The Plaintiff contends Dr. Gagne sexually harassed him when they spoke one-on-one.   The Plaintiff reported the incident, but no action was taken in response to the report.   Dr. Frayne on many occasions placed the Plaintiff on behavior observation status in retaliation for the Plaintiff's complaints to Dr. Frayne's supervisor regarding improper treatment of the Plaintiff's mental health conditions.

The Plaintiff claims that during his confinement at Northern, Commissioner Semple, Deputy Commissioner Rinaldi, Warden Cournoyer, Director Burns, Deputy Warden Mulligan, Administrator Brian Liebel, ADA Director Gallagher, and Drs. Frayne and Gagne have failed to provide mental health treatment to the Plaintiff and to hire and to train staff to deal with mentally ill inmates.   He claims Drs. Frayne and Gagne, Director Burns and Administrator Liebel have neglected to develop an adequate treatment plan for the Plaintiff's mental illnesses, failed to provide him with psychotherapy, refused to involve his family in his mental health treatment and discontinued mental health medications for him.

On February 29, 2016, Warden Cournoyer, Deputy Warden Mulligan, Dr. Mark Frayne and Dr. Gerard Gagne transferred the Plaintiff from Northern to Cheshire Correctional Institution ("Cheshire").   There are no mental health units at Cheshire.   It was the decision of Commissioner Semple, Deputy Commissioner Rinaldi, Director Burns, Acting Warden Erfe, Deputy Warden Laffargue and ADA

---

January 3, 2017).

Director Gallagher to confine the Plaintiff in administrative segregation at Cheshire.

The Plaintiff claims that during his confinement at Cheshire, Commissioner Semple, Director Burns, Acting Warden Erfe, Deputy Warden Laffargue, Dr. Cruz, ADA Director Gallagher and Captain Johnson have failed to provide mental health treatment to the Plaintiff and to train staff to deal with mentally ill inmates. He further claims Dr. Cruz and Director Burns and Health Administrator Libel have neglected to develop an adequate treatment plan for the Plaintiff's mental illnesses, failed to provide him with psychotherapy, refused to involve his family in his mental health treatment, and failed to transfer him to the mental health unit at Garner Correctional Institution in order to receive the mental health treatment that he needed.

The Plaintiff generally alleges that he has received disciplinary sanctions as a result of his behavior that was caused by his mental illness. These sanctions have included placement in punitive segregation, placement in in-cell restraints, placement in four-point restraints, exposure to chemical agents, loss of visitation and phone privileges and denial of hygiene items. No attempts were made by mental health staff to intervene prior to imposing these types of sanctions.

The Plaintiff claims that the conditions at Northern and Cheshire have "caused him to suffer from criminal charges; racing thoughts, fear for safety, loss of sleep, extreme anxiety attacks; to engage in acts of being beaten by custody

5

as a form of self-harm . . . . extreme distrust of authority figures, to isolate himself out of fear of being attacked; to have depression; [and] to have anger/rages." Compl., Dkt. No. 1 at 13.   All Defendants have allegedly received copies of the Plaintiff's mental health records and should have been aware of that he was a seriously mentally ill inmate.   Despite this knowledge, they subjected him to restrictive conditions of confinement at both Cheshire and Northern for extended periods of time.

The Plaintiff files this action pursuant to 42 U.S.C. § 1983 and the ADA.   He seeks declaratory and injunctive relief and monetary damages from the Defendants in their individual and official capacities.

II.    Legal Analysis

A.    *42 U.S.C. § 1983*

To state a claim under 42 U.S.C. § 1983, the Plaintiff must allege facts showing that the defendant, a person acting under color of state, law deprived him of a federally protected right.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).   The Plaintiff claims that the Defendants violated his Eighth, Fifth and Fourteenth Amendment rights.

The State of Connecticut Department of Correction is not a person subject to suit under 42 U.S.C. § 1983.   A state agency is not a person within the meaning of § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983).    The Department of Correction is a state agency.  *See Garris v. Dep't of Corr.*, 170 F.

Supp. 2d 182, 186 (D. Conn. 2001); *see also Vaden v. Connecticut*, 557 F. Supp. 2d 279, 288 (D. Conn. 2008) (noting "there is no basis for disputing that the Department of Corrections is an arm of the State of Connecticut").  Like other state agencies, the Department of Correction is not a person within the meaning of § 1983.  *See Santos v. State of Connecticut Dep't of Corr.*, 3:04CV1562 (JCH)(HBF), 2005 WL 2123543, at *3 (D. Conn. Aug. 29, 2005) (observing that "[n]either a Department of Correction nor a correctional institution is a person" subject to liability under § 1983); *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 271 (D. Conn. 2001) (same).    Thus, the § 1983 claims against Defendant State of Connecticut Department of Correction are dismissed as lacking an arguable legal basis.  *See* 28 U.S.C. § 1915A(b)(1).

      **B.**   *Due Process Claims Under Fifth and Fourteenth Amendments*

      The Plaintiff includes claims that Commissioner Semple, Director Burns, and Deputy Commissioner Rinaldi violated his due process rights under the Fifth Amendment as well as the Fourteenth Amendments when they transferred him to Northern and placed him in the administrative segregation program rather than transferring him to Garner.  The Fifth Amendment Due Process Clause applies to the federal government, not to the states.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without "due process of law."); *Poe v. Ullman*, 367 U.S. 497, 540 (1961)(prohibitions "against the

deprivation of life, liberty or property without due process of law" set forth in Fourteenth Amendment is applicable to state government and the same prohibitions in Fifth Amendment are applicable to "the Federal Government"); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466–67 (S.D.N.Y. 2009) (holding that any due process claim against the city was properly brought under the Fourteenth Amendment, not the Fifth Amendment).

The Plaintiff has not alleged that a federal official violated his Fifth Amendment due process rights.  Nor has he otherwise alleged facts to state a claim under the Fifth Amendment.  Accordingly, the Fifth Amendment claim against the Defendants is dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

C.   *Disciplinary Sanctions Claim*

The Plaintiff generally asserts that he received disciplinary sanctions because of behavior caused by his mental illness.  He describes the sanctions as placement in punitive segregation, denial of telephone and visitation privileges, placement in in-cell restraints, placement in four-point restraints, exposure to chemical agents, placement on behavior modification status and denial of hygiene.

The Plaintiff does not indicate when these sanctions were imposed or when the incidents occurred.   Furthermore, there are no allegations that any named Defendant was involved in or responsible for imposing these sanctions or involved in the use of a chemical agent during a cell extraction.    Thus, the

8

Plaintiff has not alleged that the Defendants violated his Eighth or Fourteenth Amendment rights in connection with the imposition of these sanctions.   The claim related to disciplinary sanctions is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

D.   *Remaining Constitutional Claims*

The court concludes that the Plaintiff has stated plausible claims under the Eighth and Fourteenth Amendments for deliberate indifference to mental health needs and safety and unconstitutional conditions of confinement against Defendants Semple, Rinaldi, Erfe, Cournoyer, Mulligan, Laffargue, Burns, Gallagher, Liebel, Cruz, Frayne, Gagne and Johnson.[3]   The Eighth Amendment sexual harassment claim will proceed against Defendant Gagne in his individual and official capacities.   *See Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) ("[A] single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct.") The Eighth and Fourteenth Amendment deliberate indifference claims will proceed against the Defendants in their individual capacities and in their official capacities to the extent that the Plaintiff seeks declaratory and injunctive relief.

---

[3]   **As indicated above, the plaintiff was a pretrial detainee during his confinement at Northern in August 2015 and until September 14, 2015, when a judge sentenced him in state court.  The plaintiff's claims regarding his confinement at Northern during August and September when he was a pretrial detainee are properly reviewed under the Fourteenth Amendment.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009)(pretrial detainee in state custody "receives protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment," not the Eighth Amendment which is applicable to convicted individuals).**

In addition, the Plaintiff has stated a plausible Fourteenth Amendment due process claim against Defendants Semple, Rinaldi and Burns in connection with his improper transfer to Northern and Cheshire and placement in the administrative segregation program at those facilities.   This Fourteenth Amendment due process claim will proceed against Defendants Semple, Rinaldi and Burns in their individual capacities and in their official capacities to the extent that the Plaintiff seeks declaratory and injunctive relief.   The Plaintiff has stated a plausible First Amendment retaliation claim against Defendant Frayne based on his alleged orders directing mental health staff to confine the Plaintiff on a restrictive behavior observation status after the Plaintiff complained to Defendant Frayne's supervisor.   The First Amendment retaliation claim will proceed against Defendant Frayne in his individual and official capacities.

E.    *ADA Claim*

The Plaintiff generally asserts that the Defendants violated his rights under Title II of the ADA, 42 U.S.C. § 12101, *et seq*.   He claims that he is a qualified individual with a disability and that the Defendants have discriminated against him because of his disability and have subjected him to restrictive housing conditions in administrative segregation.

To state a claim under the ADA, the Plaintiff must plead "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusions or discrimination was due

10

to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003). Most importantly, the Plaintiff must allege that his mistreatment was motivated by either discriminatory animus or ill will due to disability. *See Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 594-95 (S.D.N.Y. 2010) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001)).

The Department of Correction is a public entity within the meaning of the ADA. *See* 42 U.S.C. § 12131(1)(A) (defining public entity to include any state or local government); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998) ("State prisons fall squarely within [Title II's] statutory definition of 'public entity,' which includes 'any department, agency . . ., or other instrumentality of a State . . . or local government.") (quoting 42 U.S.C. § 12131(1)(B)). Furthermore, the Second Circuit has recognized that a valid ADA claim may be stated against a state official in his official capacity. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003).

The Plaintiff alleges that he suffers from serious mental health conditions and that the Defendants, despite their knowledge of his medical needs, did not provide him with treatment or house him in a facility that might have sufficient resources or staff to treat his mental illness. The Plaintiff alleges that he was denied medical treatment to which inmates are entitled. He alleges that because of this deprivation his mental health deteriorated such that he could not comport his conduct and engaged in acts of misconduct. As a result of the symptomatic behavior of his untreated mental illness, he was assigned to the restrictive

administrative segregation unit where he was deprived of the rights and privileges afforded to inmates without his mental health conditions. Specifically, he alleges he was deprived of liberty, interaction with other inmates, recreation, showers, contact visits, telephone calls, work assignments, participation in congregate religious services and use of the toilet and sink to which non-mentally ill inmates are entitled. He also alleges that he was placed in four-point restraints, exposure to chemical agents, and placed on behavior modification status. The Plaintiff's claim is likened to assigning a vision impaired inmate to administrative segregation after the inmate fell and sustained an injury in order to prevent the inmate from having another accident rather than accommodating the impairment by giving the inmate a visual aid. Plaintiff alleges that the Defendants knew that he was mentally ill and yet knowingly and intentionally denied him mental health treatment and participation in various programs or activities due to conduct caused by his untreated mental illness. The court concludes that the Plaintiff has alleged sufficient facts to state a plausible claim that the Defendants denied him treatment and participation in various programs or activities because of his mental illness. Thus, the ADA claim will proceed.

Because Title II of the ADA does not "provide[ ] for individual capacity suits against state officials," any ADA claim against the Defendants in their individual capacities is dismissed. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d at 107; 28 U.S.C. § 1915A(b)(1). The ADA claim will proceed

against the Department of Correction and the Defendants in their official capacities.

ORDERS

The Court enters the following Orders:

(1)    All § 1983 claims against Defendant Department of Correction, the Fifth Amendment due process claim, the disciplinary sanctions claim against all Defendants, and the ADA claim against all Defendants in their individual capacities are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).  The Eighth and Fourteenth Amendment claims of deliberate indifference to mental health needs and safety and unconstitutional conditions of confinement against Defendants Semple, Rinaldi, Erfe, Cournoyer, Mulligan, Laffargue, Burns, Gallagher, Liebel, Cruz, Frayne, Gagne and Johnson, the Eighth Amendment sexual harassment claim against Defendant Gagne, the Fourteenth Amendment due process claim against Defendants Semple, Rinaldi and Burns in connection with the Plaintiff's improper transfer to Northern and Cheshire and placement in the administrative segregation programs at those facilities and the First Amendment retaliation claim against Defendant Frayne will proceed.  These claims will go forward against the Defendants in their individual capacities and in their official capacities to the extent that the Plaintiff seeks declaratory and injunctive relief.  The ADA claim will proceed against Defendants Department of Correction, Semple, Rinaldi, Erfe, Cournoyer, Mulligan, Laffargue, Burns, Gallagher, Liebel, Cruz, Frayne, Gagne and Johnson in their official capacities.

13

(2)     Within twenty-one (21) days of this Order, the U.S. Marshals Service shall serve the summons, a copy of the complaint and this Order on Defendants Department of Correction, Scott Semple, Monica Rinaldi, Ann Cournoyer, Scott Erfe, William Mulligan, Craig Burns, Brian Liebel, Joslyn Cruz, Mark Frayne, Gerard Gagne, Jesse Johnson and Richard Laffargue in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3)     Within twenty-one (21) days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Commissioner Scott Semple, Deputy Commissioner Monica Rinaldi, Warden Ann Cournoyer, Deputy Wardens William Mulligan and Richard Laffargue, Acting Warden Scott Erfe, Director of Clinical Services Craig Burns, Americans with Disabilities Act Director Colleen Gallagher, Psychologist Joslyn Cruz, Drs. Mark Frayne and Gerard Gagne, Health Service Administrator Brian Liebel and Captain Jesse Johnson and mail a waiver of service of process request packet to each Defendant in his or her individual capacity at his or her current work address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of all the requests.  If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this Order. Discovery requests need not be filed with the Court.

(8)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.


SO ORDERED at Hartford, Connecticut this 6th day of January, 2016.

_____/s/_____
VANESSA L. BRYANT
UNITED STATES DISTRICT JUDGE