UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RAUDELL MERCADO,** : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 3:16cv1622(VLB) |
| : | |
| **DEP'T OF CORRECTIONS, ET AL.,** : | March 23, 2017 |
| Defendants. : | |

## RULING ON PENDING MOTIONS

The Plaintiff, Raudell Mercado, is currently incarcerated at MacDougall-Walker Correctional Institution. He initiated this action by filing a civil rights complaint against the State of Connecticut Department of Correction, Commissioner Scott Semple, Deputy Commissioner Monica Rinaldi, Warden Ann Cournoyer, Deputy Wardens William Mulligan and Richard Laffargue, Acting Warden Scott Erfe, Director of Clinical Services Craig Burns, Americans with Disabilities Act ("ADA") Director Colleen Gallagher, Psychologist Joslyn Cruz, Drs. Mark Frayne and Gerard Gagne, Health Service Administrator Brian Liebel and Captain Jesse Johnson as Defendants.

On January 6, 2017, the Court granted the Plaintiff's motion for appointment of *pro bono* counsel. The Clerk has appointed four attorneys to serve as *pro bono* counsel to the Plaintiff and all have declined. The Clerk continues to attempt to find an attorney willing to represent the Plaintiff on a *pro bono* basis.

On January 20, 2017, the Court issued a corrected Initial Review Order dismissing in part the claims in the complaint, including the claims against the Department of Correction. The Court concluded that the Eighth and Fourteenth Amendment claims of deliberate indifference to mental health needs and safety and

unconstitutional conditions of confinement relating to the Plaintiff's confinement at Northern Correctional Institution, a Fourteenth Amendment due process claim relating to the Plaintiff's transfer to Northern and Cheshire Correctional Institution and his placement in the administrative segregation programs at those facilities, and a First Amendment retaliation claim would proceed.[1] The Plaintiff has filed a motion for temporary restraining order and preliminary injunction, [ECF No. 15], a motion for an emergency hearing, [ECF No. 32], a motion to be relieved of all sanctions, [ECF No. 44], a motion to correct, [ECF No. 63], and a motion for order, [ECF No. 64]. For the reasons set forth below, the motion to correct will be granted and the motions for injunctive relief, for relief of sanctions, and for a hearing will be denied.

I. **Motion to Correct the Motion to Withdraw Motion for Relief From Sanctions [ECF Nos. 44, 63]**

On February 17, 2017, the Defendants filed a response to the motion for temporary restraining order and preliminary injunction. See [ECF No. 40]. On February 21, 2017, the Court ordered the Plaintiff to file a reply to Defendants' opposition to the motion for temporary restraining order and preliminary injunction within twenty-one days. See [ECF No. 41]. The Court also ordered the Defendants to supplement their opposition to the motion for temporary restraining order and preliminary injunction within twenty-one days. See [ECF No. 42].

---

[1] On February 6, 2017, the Court issued an order striking the Plaintiff's Eighth Amendment sexual harassment from the case without prejudice as having been misjoined. The Court informed the Plaintiff that he could assert the sexual harassment claim in a separate action. See Order, ECF No. 34.

On February 22, 2017, the Plaintiff filed a motion to be relieved of all sanctions and a motion to enforce his motion for temporary restraining order and preliminary injunction. See [ECF Nos. 43, 44]. That same day, the Court denied the motion to enforce the motion for temporary restraining order and preliminary injunction as moot in light of its order directing the Defendants to supplement their opposition to the motion for temporary restraining order and construed Plaintiff's motion to be relieved of all sanctions as a reply to the Defendants' memorandum in opposition to the motion for temporary restraining order and preliminary injunction. See [ECF Nos. 45, 46].

On March 2, 2017, the Plaintiff filed a second reply to the Defendants' opposition to his motion for injunctive relief. See [ECF No. 52]. On March 15, 2017, the Defendants filed their supplemental response to the Plaintiff's motion for temporary restraining order and preliminary injunction and Plaintiff's reply to the motion. See [ECF No. 59].

On March 17, 2017, the Plaintiff filed a motion to correct in which he requests that the Court decline to treat his motion for relief from sanctions, [ECF No. 44], as a reply to the Defendants' opposition to the motion for injunctive relief. He states that he made a mistake in filing the motion for relief from sanctions and prefers that the Court only consider the formal reply that he filed on March 2, 2017. The Court construes the Plaintiff's motion as seeking to withdraw the motion for relief from sanctions, [ECF No. 44]. The motion is granted. The Court will consider the Plaintiff's Reply, [ECF No. 52], in addressing the motion for temporary restraining

order and for preliminary injunction and the Defendants' memorandum in opposition to the motion.

II. Motion for Temporary Restraining Order and Injunction [ECF No. 15] and Motion for Emergency Hearing [ECF No. 32]

Preliminary injunctive relief "is an 'extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted). In this circuit the standard for injunctive relief is well established.

To warrant preliminary injunctive relief, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary injunctive relief." *Cacchillo v. Insmed, Inc.,* 638 F.3d 401, 405-06 (2d Cir. 2011) (internal quotation marks omitted).

The standard that is used to review a request for a preliminary injunction is also used to review a motion seeking a temporary restraining order. *See Local 1814 Int'l Longshoremen's Ass'n. AFL-CIO v. New York Shipping Ass'n. Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). A district court has wide discretion in determining whether to grant preliminary injunctive relief. *See Moore*, 409 F.3d at 511.

A hearing is generally required on a properly supported motion for preliminary injunction if material facts are in dispute. *See Kern v. Clark,* 331 F.3d 9, 12 (2d Cir. 2003) ("the existence of factual disputes necessitates an evidentiary hearing . . . before a motion for preliminary injunction may be decided.") (internal quotation marks and citation omitted). "[W]hen the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case . . . or when the disputed facts are amenable to complete resolution on a paper record," a hearing is not required to resolve a motion for preliminary injunction. *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir.1998) (citations omitted).

    A.    *Motion for Emergency Hearing [ECF No. 32]*

Despite its title, the motion contains no express or implicit request for a hearing. In essence, the motion seeks expedited consideration of the Plaintiff's motions which request is satisfied by this order. Thus, to the extent that the motion seeks a hearing, it is denied.

To the extent that the motion seeks an order directing the Defendants to respond to the motion for restraining order and preliminary injunction, the request is denied as moot. As indicated above, the Defendants have responded to the motion and to the Plaintiff's reply to their response to the motion.

The motion also includes a request for injunctive relief in the form of an order relieving him of sanctions that were imposed on him at Northern and/or MacDougall-Walker. Those sanctions involve the loss of commissary, telephone and visitation privileges. The Plaintiff does not allege that any of the Defendants in this action were

involved or responsible for imposing the sanctions. Nor does he elaborate on the circumstances surrounding the imposition of these sanctions.

Furthermore, the Plaintiff has no right to purchase items at the commissary, make telephone calls or have visitors. Courts have held that inmates have no constitutional right to use the telephone without restrictions. *See Banks v. Argo,* No. 11 Civ. 4222(LAP), 2012 WL 4471585, at *5 (S.D.N.Y. Sept. 25, 2012) ("[p]risoners do not have an absolute right to make phone calls") (internal quotation marks and citation omitted); *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) (inmates "have no right to unlimited telephone calls") (citation omitted). The Plaintiff does not allege that he was held incommunicado. He does not allege that he was unable to communicate through the mail during his confinement in the administrative phase program at Northern or MacDougall-Walker. *See Riddick v. Arnone*, No. 3:11cv631(SRU), 2012 WL 2716355, at *3, 6 (D. Conn. July, 2012) (dismissing claim that prison officials denied Plaintiff access to telephone on ground that inmates do not have a "constitutional right to unrestricted telephone use" and Plaintiff did not allege that he was barred from communicating through mail during period when he could not use telephone); *Henry v. Davis*, No. 10 Civ. 7575(PAC)(JLC), 2011 WL 5006831, at *2 (S.D.N.Y. Oct. 20, 2011) (telephone use restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communication).

In addition, an inmate has no right to buy items from the commissary. *See Vega v. Rell*, No. 09-CV-0737, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011)

6

(stating it is well established that "[i]nmates have no constitutional right to purchase items from the prison commissary") (citing cases). Nor does a prisoner have a constitutionally protected right to contact or noncontact visits under the Due Process Clause of the Fourteenth Amendment. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (holding that "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause"). Accordingly, the denial of access to these privileges does not violate the Plaintiff's constitutional rights. Nor has he alleged facts tending to establish a claim that the deprivation of these privileges will cause him to suffer imminent harm if the Court does not order the Defendants to terminate the sanctions. This request for injunctive relief contained in the motion for emergency hearing is denied.

> B. *Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 15]*

The Plaintiff claims that he has been confined on administrative segregation at Northern under restrictive conditions since August 2015. He states that he is mentally ill and suffers from bipolar disorder, depression and antisocial personality disorder. He claims that during his confinement at Northern, the Defendants discontinued prescriptions for medications that had previously been prescribed to treat his mental illness and that his mental health has deteriorated. In addition, he claims that prison officials have imposed sanctions on him including loss of telephone and visitation privileges. He states that he is not permitted to call or visit with his family unless a family emergency exists.

At times, other inmates and correctional staff at Northern have called the Plaintiff names and have attempted to provoke him. He seeks an immediate transfer to Garner Correctional Institution to ensure that he receives appropriate mental health treatment.

In their memoranda in opposition to the motion seeking injunctive relief, the Defendants argue that the Plaintiff does not suffer from a mental illness that requires treatment at Garner. In addition, the Defendants state that the Plaintiff's request for relief is moot given that he is no longer confined at Northern.

In support of their memorandum, the Defendants filed the affidavit of Dr. Frayne and the Plaintiff's RT60 showing the dates of his confinement and transfers to various prison facilities from 2014 to February 2017. *See* [ECF No. 40, Exs. A & B]. On March 23, 2015, the Plaintiff was re-admitted to the Department of Correction and confined at New Haven Correctional Center. *See id.*, [ECF No. 40-2, Ex. B]. On April 16, 2015, prison officials at New Haven Correctional Center transferred the Plaintiff to the Manson Youth Institution. *See id.* On August 5, 2015, prison officials at Manson Youth Institution transferred the Plaintiff to Cheshire Correctional Institution. *See id.* On August 7, 2015, prison officials at Cheshire transferred the Plaintiff to Garner Correctional Institution. *See id.*

Dr. Frayne avers that at some point during his confinement at Manson Youth Institution in 2015, the Plaintiff assaulted a staff member. *See id.*, [ECF No. 40-1, Ex. A, Frayne Aff. ¶ 9]. After the Plaintiff's transfer to Garner on August 7, 2015, a team of mental health providers examined the Plaintiff for twenty-one days to determine if he

required extensive psychiatric care at Garner. *See id.*, [Frayne Aff. ¶¶ 10-11]. The treatment team concluded that the Plaintiff did not require treatment at Garner because he did not suffer from a serious mental illness. *See id.*, [Frayne Aff. ¶ 11]. On August 28, 2015, prison officials at Garner transferred the Plaintiff to Northern to begin the administrative segregation program. *See id.*, [Frayne Aff. ¶ 12].

After his arrival at Northern, Dr. Frayne met with the Plaintiff and the Plaintiff insisted that he suffered from bipolar disorder. *See id.*, [Frayne Aff. ¶ 13]. Drs. Frayne and Gagne then reviewed the Plaintiff's medical, mental health, and correctional records as well as the Plaintiff's pre-sentence investigation report, which included his psycho-social history. *See id.*, [Frayne Aff. ¶ 14]. After reviewing the Plaintiff's records, Dr. Frayne diagnosed the Plaintiff as suffering from antisocial and narcissistic personality disorders. *See id.*, [Frayne Aff. ¶ 30]. The Plaintiff disagreed with these alternate explanations of his behaviors. *See id.*, [Frayne Aff. ¶ 19].

The Individual Behavior Plan recommended by Dr. Frayne was designed to address the Plaintiff's maladaptive behaviors. *See id.*, [Frayne Aff. ¶ 34]. Dr. Frayne opines that these behaviors do not constitute mental health conditions that typically respond to medication. *See id.* Nor do the conditions require a specialized treatment plan that is only available at Garner. *See id.* At MacDougall-Walker, the Plaintiff is being treated using a behavior-driven intervention plan. *See id.*

Over the two years that Dr. Frayne treated the Plaintiff at Northern, he did not observe a deterioration in the Plaintiff's mental health. *See id.*, [Frayne Aff. ¶ 35].

**During his confinement at Northern, the Plaintiff's behavior ultimately stabilized without the use of medication.** *See id.*, **[Frayne Aff. ¶ 37].**

**The Plaintiff was able to meet the requirements of phase one of the administrative segregation program and advance to phase two of the program.** *See id.*, **[Frayne Aff. ¶ 38]. On February 1, 2017, prison officials at Northern transferred the Plaintiff to MacDougall-Walker to start and complete phase two of the administrative segregation program.** *See id.*, **[ECF No. 40-1, Frayne Aff. ¶ 38]; [ECF No. 40-2, Ex. B].**

**In response to the Court's order regarding the conditions of confinement at MacDougall-Walker and whether the Plaintiff remains in administrative segregation, the Defendants have indicated that the Plaintiff remains in administrative segregation, but has advanced to phase two of the program. The conditions in phase two of the program are less restrictive than the conditions in phase one.** *See* **[ECF No. 59]. If the Plaintiff is able to comply with the requirements of phase two of the administrative segregation program, he would advance to phase three of the program.** *See* **State of Connecticut Administrative Directive 9.4(12)(G).[2] Phase three of the program involves conditions that are less restrictive than both phase one and phase two of the program.** *See id.*, **Admin. Dir. 9.4, Attach. A.[3]**

---

[2] **This State of Connecticut Department of Correction Administrative Directive may be found at: http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0904.pdf.**

[3] **Attachment A to State of Connecticut Department of Correction Administrative Directive 9.4 may be found at: http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0904atta.pdf.**

The Plaintiff has filed a reply to the Defendants' initial response to the motion seeking injunctive relief.  See [ECF No. 52].  He states that at MacDougall-Walker, he is confined in his cell for twenty-three hours a day, but is permitted to participate in recreation and take a shower without restraints.  See id. at 2.  He does not trust any Department of Correction mental health staff, has nightmares, sleeps about three to four hours a day and is scared and nervous.  See id.  He continues to seek transfer to Garner for treatment.  He assumes that mental health providers at Garner will re-prescribe the same medications that other providers had prescribed prior to his transfer to Northern in August 2015.

The Plaintiff claims that many mental health providers have diagnosed him as suffering from bipolar disorder.  He contends that hospitals and programs from which he received treatment prior to his incarceration have medical records that include this diagnosis.  The Plaintiff has not submitted any medical records of past diagnoses of his mental health conditions.  As noted above, the Plaintiff has been in state custody at various penal facilities since 2014 and the doctors who diagnosed the Plaintiff examined his prior medical history.  The Plaintiff does not indicate whether he has requested to be seen or has been seen by mental health staff at MacDougall-Walker since his transfer there on February 1, 2017.  The Plaintiff has not alleged that prison officials at MacDougall-Walker have denied or are depriving him of mental health treatment.  Instead, the Plaintiff suggests that he has refused treatment because he distrusts doctors who work for the Department of Correction.  However, he states no facts establishing that he made an effort to forge a relationship with any

11

medical professional or facts which would justify his distrust. Where the dispute between an inmate and prison staff over medical treatment concerns, not absence of treatment, but kind of treatment; or where the inmate merely disagrees with the treatment afforded or offered, the Court will not second guess the professional judgment of trained medical professionals in considering inmate's Eighth Amendment claim. *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). The Plaintiff alleges no egregious facts which causes the Court to question the application of this precedent.

Although the Plaintiff complains about confinement in his cell at MacDougall-Walker for twenty-three hours a day, that type of confinement in and of itself does not rise to the level of an Eighth Amendment violation. Prisoners have no right to be housed in comfortable surroundings. The Supreme Court has held that restrictions do not violate the Eighth Amendment proscription against cruel and unusual punishment unless they are "totally without penological justification," "grossly disproportionate," or "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "To the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. A prisoner's conditions of confinement, however, must meet "minimal civilized measures of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The Plaintiff does not allege that prison officials at MacDougall-Walker have deprived him of his "basic human needs—*e.g.,* food,

clothing, shelter, medical care, and reasonable safety. . . ." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

In view of the fact that the Plaintiff has advanced to the second phase of the administrative segregation program, is no longer confined at Northern, and has not alleged that prison officials at MacDougall-Walker have denied or are depriving him of access to mental health treatment, the Court concludes that the Plaintiff has not alleged that he will suffer imminent harm if the relief requested in his motion for injunctive relief, a transfer to Garner, is not granted.  Absent any allegations of irreparable injury, the Plaintiff fails to satisfy the first requirement for the issuance of injunctive relief.  Because there is no showing of irreparable harm, the Court need not examine the other requirements for the issuance of injunctive relief. *See Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990) (party seeking injunctive relief must demonstrate irreparable harm "before other requirements for the issuance of an injunction will be considered").

Furthermore, it is apparent that the Plaintiff's claims for injunctive relief relating to his conditions of confinement at Northern are now moot. *See Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir.1976) (inmate's request for injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution); *Martin–Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir.1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed").  It naturally follows that an exception to this general

13

principle exists where the harm is capable of repetition. As the Supreme Court explained in *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S. Ct. 669, 38 L.Ed.2d 674 (1974), "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983); *see Altman v. Bedford Cent. Sch. Dist., 245 F.3d 49, 71 (2d Cir.2001) (*narrow exception to dismissal of moot claim exists if claim is "'capable of repetition, yet evading review'") *(quoting City of Los Angeles v. Lyons, 461 U.S. at 109).* As indicated above, the plaintiff was transferred to a less restrictive setting after this lawsuit was filed when he was advanced from phase one to phase two of the administrative segregation program at MacDougall-Walker. He has control over whether he complies with the requirements to complete phase two and to advance to phase three. There is nothing in his motion or his reply to the response to his motion that suggests that any future transfer back to Northern is likely in the near future.

Furthermore, even if the Plaintiff's transfer back to Northern were capable of repetition, his subsequent confinement at Northern under restrictive conditions would not escape review. The Plaintiff could file a new motion seeking injunctive relief with regard to the conditions. For all of the reasons above, the motion for temporary restraining order and preliminary injunction is denied.

**III.    Motion to Order Walker Personnel to Stop Tampering with Mail [ECF No. 64]**

The Plaintiff claims that he is not receiving Notices of Electronic Filing ("NEFs") that are generated when either he or the Defendants file a motion or document with the Court electronically until three to four days after the NEFs are emailed to MacDougall-Walker.  He states that he has raised the issue with correctional staff and that the staff member who delivers the NEFs at MacDougall-Walker does not think there is any problem with delivering the NEFs three or four days after they are emailed to the facility.  The Plaintiff also complains that his social mail and some legal mail that is being sent to him via the United States Mail is being opened by a lieutenant and is not being delivered to him for twelve to fourteen days after it is received at the facility.  He believes the delays in delivery of his mail are due to the fact that some of the inmates who live in his housing unit are gang members. He asks the Court to intervene.

With regard to the allegations about the delayed receipt of NEFs and other legal mail, the Plaintiff has not alleged that the delays have interfered with his access to the courts.   Moreover, the inmate is receiving the NEF's earlier than he would receive them if the clerk of Court mailed them to him.

Furthermore, as indicated above, the claims in the complaint relate to the Plaintiff's confinement at Northern and Cheshire in 2015 and 2016.  The allegations in the current motion relate to conditions at MacDougall-Walker regarding the receipt of legal and social mail in 2017.  The claims are unrelated to the allegations in the complaint and do not involve any of the Defendants named in the complaint.   The

15

**Plaintiff does not allege that he made any attempt to try to resolve his issues with regard to mail delivery through the inmate grievance procedure.**

**Finally, it would be inappropriate for the Court to grant requests for injunctive relief that are unrelated to the claims and the Defendants in the complaint.  *See De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which relief may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside the issues in the suit"); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."); *Lewis v. Johnson*, No. 08-CV-482(TJM)/ATB), 2010 WL 1268024, at \*3-4 (N.D.N.Y. Apr. 1, 2010) (denying motion for preliminary injunction based on actions taken by staff at Great Meadow Correctional Facility in 2010 where complaint alleged wrongdoing by staff at Franklin and Upstate Correctional Facilities in 2006 and 2007).  Accordingly, for all the reasons set forth above, the motion seeking Court intervention regarding mail delivery at MacDougall-Walker is denied.**

## Conclusion

The Motion to Correct Document [ECF No. 63], is construed as a motion to withdraw the Motion to be Relieved of all Sanctions, [ECF No. 44], and is GRANTED. The Clerk is directed to terminate Motion, [ECF No. 44], as having been withdrawn.

The Motion for Temporary Restraining Order and Preliminary Injunction, [ECF No. 15] and the Motion to Order Walker Personnel to Stop Tampering with Mail [ECF No. 64] are DENIED.  The Motion for Emergency Hearing [ECF No. 32] is DENIED as moot to the extent that it seeks an order directing the Defendants to respond to the motion for restraining order and preliminary injunction and DENIED to the extent that it seeks a hearing on the motion for temporary restraining order and preliminary injunction and to the extent that it seeks injunctive relief related to imposed sanctions.

If appropriate, the Clerk may make any necessary inquiries to Department of Correction personnel with regard to the Prisoner Electronic Filing Program and the timing of the delivery of NEFs by correctional staff at MacDougall-Walker Correctional Institution to inmates confined at the facility, including the Plaintiff.

SO ORDERED at Hartford, Connecticut this 23 day of March, 2017.

                                           _____/s/_____
                                           VANESSA L. BRYANT
                                           UNITED STATES DISTRICT JUDGE