UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| RAUDELL MERCADO, | : | |
|---|---|---|
| *Plaintiff*, | : | CIVIL CASE NUMBER: |
| | : | |
| v. | : | 3:16-cv-01622-VLB |
| | : | |
| DEP'T OF CORRECTIONS, *et al.*, | : | June 12, 2017 |
| *Defendants*. | : | |

## RULING AND ORDER

On May 25, 2017, Plaintiff, *pro se*, filed a Motion for an Emergency Hearing on Getting Mental Health Treatment. [Dkt. 86]. In this motion, Plaintiff stated he took 12-15 aspirin on May 13, 2017, because he was "feeling depressed and emotional" in part because he was "in the cell for 24 hours due to it being Saturday and on the weekends." *Id.* As a result of this intentional overdose, he was taken to the infirmary where medical staff then discontinued his medications. *Id.* Plaintiff also notified the Court in this motion that he would be released from Connecticut Department of Correction ("DOC") custody on June 16, 2017. *Id.* He requested a hearing to receive proper medical treatment before his release because he feared release without medication. *Id.* The Court granted the motion and held a hearing on June 6, 2017. The Court construes Plaintiff's request to be one for a temporary restraining order and/or preliminary injunction. For the following reasons, the Court DENIES Plaintiff's request.

### Background

Plaintiff is currently incarcerated at Northern Correctional Institution ("Northern"). He claims to have been diagnosed with multiple mental disorders

1

and that he has taken medication to treat the disorders since childhood. According to Plaintiff, Northern does not have a mental health unit, and he has been placed in the administrative segregation unit for almost the entirety of his stay there. Plaintiff believes that the Defendants have acted with deliberate indifference in failing to provide him with adequate mental health treatment during his custody at Northern and previously at Cheshire Correctional Institution ("Cheshire"). Plaintiff claims that the conditions at Northern and Cheshire have "caused him to suffer from criminal charges; racing thoughts, fear for safety, loss of sleep, extreme anxiety attacks; to engage in acts of being beaten by custody as a form of self-harm . . . extreme distrust of authority figures, to isolate himself out of fear of being attacked; to have depression; [and] to have anger/rages." [Dkt. 1 ¶ 57].

In addition, Plaintiff contends Defendant Dr. Gagne sexually harassed him when they spoke one-on-one. The Plaintiff reported the incident, but no action was taken in response to the report. Plaintiff also alleges Defendant Dr. Frayne on many occasions placed the Plaintiff on behavior observation status in retaliation for the Plaintiff's complaints to Dr. Frayne's supervisor regarding improper treatment of the Plaintiff's mental health conditions.

Plaintiff filed a complaint with this Court on September 27, 2016, seeking declaratory and injunctive relief and monetary damages for violations of 42 U.S.C. § 1983, due process under the Fifth and Fourteenth Amendments, unlawful disciplinary sanctions, the Eighth Amendment for an alleged sexual harassment, the First Amendment for retaliation, and 42 U.S.C. § 12101, *et seq.* The Court

dismissed certain allegations in its Initial Review Order, [Dkt. 20], and presently the following claims remain:

- the Eighth and Fourteenth Amendment claims of deliberate indifference to mental health needs and safety and unconstitutional conditions of confinement against Defendants Semple, Rinaldi, Erfe, Cournoyer, Mulligan, Laffargue, Burns, Gallagher, Liebel, Cruz, Frayne, Gagne and Johnson in their individual and official capacities;

- the Eighth Amendment sexual harassment claim against Defendant Gagne in his individual and official capacity;

- the Fourteenth Amendment due process claim against Defendants Semple, Rinaldi and Burns in their individual and official capacities in connection with the Plaintiff's improper transfer to Northern and Cheshire and placement in the administrative segregation programs at those facilities;

- the First Amendment retaliation claim against Defendant Frayne in his individual and official capacity; and

- the ADA claim against Defendants Department of Correction, Semple, Rinaldi, Erfe, Cournoyer, Mulligan, Laffargue, Burns, Gallagher, Liebel, Cruz, Frayne, Gagne and Johnson in their official capacities.

*Id.* at 13. Due to Plaintiff's recently filed Motion for Emergency Hearing, the Court learned that Plaintiff will be released on June 16, 2017. The Court held a hearing to address his current medical treatment as well as DOC's procedure prior to and subsequent to release.

## Legal Standard

A temporary restraining order is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Reidy*, 477 F. Supp. 2d 472, 474 (D. Conn. 2007) (quoting *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005)). "The purpose of a temporary restraining

3

order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009). The factors considered in assessing whether to grant a request for a temporary restraining order are similar to those used to determine the merits of a motion for a preliminary injunction. *See Control Sys., Inc. v. Realized Sols., Inc.*, No. 3:11CV1423 PCD, 2011 WL 4433750, at *2 (D. Conn. Sept. 22, 2011) (citing *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)).

Generally, a party seeking a temporary restraining order or a preliminary injunction "must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir.2011) (internal quotation marks omitted); *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 779–80 (2d Cir. 1994) (applying same standard to motion for temporary restraining order and motion for order to show cause why a preliminary injunction should not be granted). However, where a plaintiff seeks a mandatory injunction, *i.e.,* "one that alter[s] the status quo by commanding some positive act," a higher standard applies. *Rush v. Fischer,* No. 09 Civ. 9918(JGK), 2011 WL 6747392, at *2 (S.D.N.Y. Dec. 23, 2011) (alteration in original) (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); *accord Cacchillo*, 638 F.3d at 405–06. The party seeking the injunction must show a "'clear'

4

or 'substantial' likelihood of success." *Griffin v. Alexander,* 466 F. App'x 26, 28 (2d Cir. 2012) (quoting *Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir.1996)).

## Analysis

Plaintiff requests that the Court compel Defendants to provide medication that they used to but are no longer prescribing him. Such a request is related to his allegations for deliberate indifference to a serious medical need. To establish his claim, Plaintiff must show both that his medical need is serious and that the defendants acted with sufficiently culpable states of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (discussing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976)). There are both subjective and objective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious" in that it is a condition of "urgency" and may "produce death, degeneration or extreme pain. . . ." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005). Subjectively, the defendants must have "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). A prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety"; the official must both be aware of facts from which the inference could be drawn that a "substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

The Eighth Amendment prohibition against cruel and unusual punishment is violated where medical treatment is withheld without justification. *See Dolson v.*

*Fischer*, 613 F. App'x 35, 38 (2d Cir. 2015). By contrast, negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under § 1983. *See Salahuddin*, 467 F.3d at 280. Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference. *See Ventura v. Sinha*, 379 F. App'x 1, 2-3 (2d Cir. 2010) (finding insufficient evidence that medical staff acted with culpable state of mind where plaintiff's medical limitations were inconsistent with program requirements); *see Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.").

At the hearing on June 6, 2017, the Court received evidence enabling it to make critical findings of fact not present in the motion. Plaintiff stated that he has been provided medication, albeit medication that is different from that which he was provided before his aspirin overdose. [Dkt. 94 at 8:07]. He confirmed that the current medication makes him feel better than he did prior to his overdose. *Id.* 8:11. It is also now clear that his medication is monitored by the DOC medical staff and may be adjusted according to his needs. *See id.* at 8:09, 8:11. Plaintiff's prior medications were suboptimal as evidenced by his anxiety resulting in his intentional overdose of aspirin. *See id.* This overdose was triggered by his isolation, and he will no longer be isolated after he is discharged on June 16, 2017. *See id.* at 8:08-8:12. Furthermore, Defendant Frayne testified that he believes Plaintiff presently has a mental health score of three, *id.* at 8:12, which requires the

**DOC medical staff to evaluate Plaintiff prior to release and develop a discharge plan, including the coordination of his medication and mental health treatment at a community organization.** *See* **Administrative Directive 9.3 (Inmate Admissions, Transfers and Discharges) ¶ 12(A).**[1] **Plaintiff confirmed that he has a discharge counselor with whom he has spoken and who is in the process of developing such a discharge plan in accordance with Directive 9.3.** *See* **[Dkt. 94 at 8:18].**

**Accordingly, even assuming Plaintiff's mental health needs are "sufficiently serious" to satisfy the objective test, the Court finds that none of the DOC employees have been deliberately indifferent to Plaintiff's mental health needs for the actions described in the Motion for Emergency Hearing, as medical staff proceeded to treat him in a reasonable manner and Plaintiff admits to feeling better.** *See id.* **at 8:11 (wherein plaintiff stated he feels "a little bit better" than he did before and the day he took aspirin), 8:21 (finding prior medication was not as effective as it should be because plaintiff ingested and overdosed on aspirin). Therefore, no preliminary injunction or temporary restraining order is warranted.**

**The Court further finds that Plaintiff's release from custody will moot his claim for injunctive relief to be transferred to Garner Correctional Institution. Plaintiff has advised the Court that he intends to continue to pursue all other claims remaining in this action upon his release with the understanding that because the Court does not have the authority to require counsel to represent him, he will likely**

---

[1] **The Court takes judicial notice that the Connecticut Department of Correction ("DOC") makes available to the public its Administrative Directives, including those for discharge of inmates.** *See* **Dep't of Corr.** *Administrative Directive Chapter 9: Classification,* **http://www.ct.gov/doc/cwp/view.asp?a=1494&q=265226.**

have to continue to represent himself. *See* 28 U.S.C. § 1915(e)(1) ("The court *may* request an attorney to represent any person unable to afford counsel.") (emphasis added); *Mallard v. U.S. Dist. Court for Southern Dist. of Iowa,* 490 U.S. 296, 310 (1989) ("We hold only that § 1915(d) does not authorize the federal courts to make coercive appointments of counsel."). Indeed, once he is released the need for counsel will diminish due to his increased access to legal resources in the community and his continued ability for him to communicate with inmates.

The case will therefore proceed with respect to his claims for damages against the following Defendants for the following allegations:

- the Eighth and Fourteenth Amendment claims of deliberate indifference to mental health needs and safety and unconstitutional conditions of confinement against Defendants Semple, Rinaldi, Erfe, Cournoyer, Mulligan, Laffargue, Burns, Gallagher, Liebel, Cruz, Frayne, Gagne and Johnson in their individual and official capacities;

- the Eighth Amendment sexual harassment claim against Defendant Gagne in his individual and official capacity;

- the First Amendment retaliation claim against Defendant Frayne in his individual and official capacity; and

- the ADA claim against Defendants Department of Correction, Semple, Rinaldi, Erfe, Cournoyer, Mulligan, Laffargue, Burns, Gallagher, Liebel, Cruz, Frayne, Gagne and Johnson in their official capacities.

## Conclusion

Plaintiff's construed request for a temporary restraining order or preliminary injunction are hereby DENIED. This matter is referred to Magistrate Judge Robert A. Richardson for a discovery planning conference and schedule.

**IT IS SO ORDERED.**

                                                                     /s/_____

                                              **Hon. Vanessa L. Bryant**

                                              **United States District Judge**

**Dated at Hartford, Connecticut: June 12, 2017**